**UNITED STATES of America,**
**Plaintiff–Appellant,**

v.

**Miguel Doningo GREGORY,**
**Defendant–Appellee.**

No. 01–10737.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 5, 2002.

Filed March 11, 2003.

Thomas Muehleck, Assistant United States Attorney, Honolulu, HI, for the plaintiff-appellant.

Philip H. Lowenthal, Wailuki, HI, for the defendant-appellee.

Before: SCHROEDER, Chief Judge, ALARCÓN and FISHER, Circuit Judges.

FISHER, Circuit Judge:

Because the government chose to bring a delayed superseding indictment against the appellant, Miguel Doningo Gregory, we must resolve two constitutional challenges Gregory invoked in the district court, resulting in that court's dismissal of the government's most recent indictment charging Gregory with money laundering. In October 1999, the government indicted Gregory on drug charges. Gregory pled guilty to the charges and was sentenced to 247 days in prison, eight months of home detention and three years of supervised release. Then in March 2001, while Gregory was on home detention after serving his prison time, the government issued a third superseding indictment charging Gregory with money laundering in connection with the same drug deals that had landed him in prison. Finding Gregory was prejudiced by the government's negligence in delaying the money laundering charges, the district court dismissed the third superseding indictment as violating the Sixth Amendment's speedy trial guarantee and the Due Process Clause of the Fifth Amendment. The government now appeals.

We conclude that whatever the merits of the government's decision to issue a delayed third superseding indictment, it did not cause Gregory the kind of prejudice that violates the Sixth Amendment, nor the "actual, non-speculative prejudice from the delay" necessary to establish a Fifth Amendment violation. We therefore must reverse the district court's dismissal of Gregory's third superseding indictment.

## FACTUAL AND PROCEDURAL BACKGROUND[1]

In September 1999, Betsy Morales and Jason Pain were arrested for transporting marijuana from Los Angeles to Maui. Pain, after his arrest, told law enforcement agents that he and Morales were part of a drug trafficking conspiracy with Gregory and Challa Johnson, Gregory's girlfriend at the time. According to Pain, he and Morales had been selling marijuana on Maui for Gregory, who instructed Pain to deposit proceeds from the sales into Johnson's bank accounts. A federal grand jury indicted Pain and Morales on drug charges on October 1, 1999.

Cooperating with the government between October 7 and October 12, 1999, Pain made a number of controlled deposits of fake drug proceeds into Johnson's accounts. He also kept the government informed about Gregory's actions and whereabouts during that time. On October 14, Gregory flew from Los Angeles to Maui to pick up the remaining unsold marijuana and additional drug proceeds from Pain. Upon his return to Maui, Gregory was arrested on October 15.

According to IRS Special Agent Jason Pa, the government subpoenaed some of Johnson's records from the Bank of Hawaii in early October 1999. One week later, the bank produced the records. The government received copies of the signa-

---

1. The district court entered extensive findings of fact and made a well-considered effort to deal with the unique circumstances presented in this case. *See United States v. Gregory,* 160 F.Supp.2d 1166 (D.Haw.2001).

ture card and statements for Johnson's savings account for the period from June 1997 through October 1, 1999, and for her checking account from September 1997 through September 1999. The government neither requested nor received records that would have provided specific information about deposits into the savings account, such as copies of the front and back of the deposit slips.

On October 28, 1999, a grand jury returned a first superseding indictment against Pain, Morales and Gregory. It charged them with conspiracy to distribute marijuana and possession with intent to distribute marijuana. Pain and Morales subsequently pled guilty. On February 17, 2000, the government filed a second superseding indictment that repeated the earlier charges against Gregory and added Johnson to those same charges. Johnson was arrested on February 24, 2000.

After Johnson's arrest, the government threatened to file additional money laundering charges against Gregory if he did not cooperate and testify against Johnson. Gregory refused to cooperate, and on March 13, 2000, he pled guilty to both counts of the second superseding indictment without a plea agreement. The district court sentenced Gregory to 247 days in prison, eight months of home detention and three years of supervised release. He was released from prison on November 20, 2000.

Meanwhile, in September 2000, the government resumed its investigation of money laundering by Gregory and Johnson and subpoenaed additional records from the Bank of Hawaii. On or about September 20, the government received additional savings account statements, copies of canceled checks from the checking account, and copies of the slips used to make deposits into both accounts. Armed with this new evidence, on March 14, 2001—four court days before Johnson's trial was scheduled to begin and months after Gregory's release from prison on the drug convictions—the government filed a third superseding indictment against Gregory and Johnson. This indictment repeated the two drug charges against Johnson and added nine counts of money laundering against Gregory and Johnson. Gregory moved to dismiss the third superseding indictment, claiming that the government's delay in filing the indictment violated his Sixth Amendment right to a speedy trial.[2] The district court dismissed the third superseding indictment on the Sixth Amendment ground and, in the alternative, on the ground that the government's excessive preindictment delay violated the Fifth Amendment. The court found that the government was negligent in delaying the third superseding indictment to add the money laundering charges, that Gregory had shown prejudice as a result of the delay and that the delay offended "those fundamental conceptions of justice that lie at the base of our civil and political institutions." *See Gregory*, 160 F.Supp.2d at 1177–78. The government now appeals the dismissal of the third superseding indictment. We have jurisdiction pursuant to 28 U.S.C. § 1291.

## STANDARD OF REVIEW

We review the district court's decision on Gregory's Sixth Amendment speedy trial claim de novo. *United States v. Manning*, 56 F.3d 1188, 1193 (9th Cir. 1995). We review its factual determinations on this claim for clear error. *United*

---

**2.** Gregory also claimed that the delayed filing of the third superseding indictment constituted unreasonable delay under Federal Rule of Criminal Procedure 48(b). The district court denied Gregory's motion to dismiss on this ground, and we do not address this issue as the parties have not raised it on appeal.

*States v. Tanh Huu Lam,* 251 F.3d 852, 855 (9th Cir.2001). The district court's dismissal of the indictment for excessive preindictment delay in violation of the Fifth Amendment is reviewed for an abuse of discretion. *United States v. Martinez,* 77 F.3d 332, 335 (9th Cir.1996). We review a finding of prejudice under the Fifth Amendment for clear error. *United States v. Huntley,* 976 F.2d 1287, 1290 (9th Cir.1992).

## DISCUSSION

The government's decision to delay filing a third superseding indictment may be unusual, but charging Gregory later for money laundering arising out of the same course of conduct as his drug offenses is not in and of itself a constitutional violation. *See United States v. Dixon,* 509 U.S. 688, 705, 113 S.Ct. 2849, 125 L.Ed.2d 556 (1993); *United States v. Lovasco,* 431 U.S. 783, 791–92, 97 S.Ct. 2044, 52 L.Ed.2d 752 (1977). The government was free to file a new indictment, rather than a superseding indictment, for Gregory's money laundering charges in March 2001. Such a new indictment, issued five months before Gregory's August 14, 2001, trial date, would have presented no constitutional speedy trial problems. *See United States v. Turner,* 926 F.2d 883, 889 (9th Cir.1991) (four-month delay was insufficient to trigger a speedy trial inquiry); *United States v. Valentine,* 783 F.2d 1413, 1417 (9th Cir. 1986) (six-month delay is a "borderline case"). The question before us, however, is not whether the government should have chosen to charge Gregory in a new indictment, but whether its choice to issue a superseding indictment created a delay which violated Gregory's Fifth or Sixth Amendment rights.

## I. Sixth Amendment Speedy Trial Claim

■ The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy ... trial." We evaluate the merits of Gregory's claimed violation of the Sixth Amendment speedy trial right by applying a balancing test involving four factors: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his right to a speedy trial; and (4) the prejudice to the defendant. *Barker v. Wingo,* 407 U.S. 514, 530, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). This court has recognized that:

> Significantly, in the words of the *Barker* ·Court, "We regard none of the four factors identified above as either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial. Rather, they are related factors and must be considered together with such other circumstances as may be relevant. In sum, these factors have no talismanic qualities; courts must still engage in a difficult and sensitive balancing process."

*Lam,* 251 F.3d at 855–56 (quoting *Barker,* 407 U.S. at 533, 92 S.Ct. 2182). Although we do not condone the government's decision to issue a delayed superseding indictment, we conclude that because there is no clear prejudice to Gregory resulting from the delay, the balance tips in favor of the government. Gregory is therefore not entitled to the dismissal of the third superseding indictment on Sixth Amendment grounds.

### A. The Length of the Delay

■ The first *Barker* factor, the length of the delay, is a threshold issue. *See United States v. Beamon,* 992 F.2d 1009, 1012 (9th Cir.1993). Gregory "must show that the period between indictment and trial passes a threshold point of 'presumptively prejudicial' delay," and if he does we proceed to the other *Barker* factors. *Id.* Although there is no bright-line rule, courts generally have found that delays

approaching one year are presumptively prejudicial.[3] *Doggett v. United States,* 505 U.S. 647, 652 n. 1, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992). Under the Sixth Amendment, delay is measured from "the time of the indictment to the time of trial." *United States v. Sears, Roebuck & Co.,* 877 F.2d 734, 739 (9th Cir.1989). The government argues that the district court erred in measuring the delay from the date of the first superseding indictment, October 28, 1999, rather than from the date of the third superseding indictment, March 14, 2001.

For purposes of our balancing, and given the government's own linkage of the third indictment to the first, we assume without deciding that the delay in this case should be measured from the date of the first superseding indictment, which is the first indictment in which Gregory was named. We therefore assume the district court properly found that the 22–month delay between the date of the first superseding indictment and Gregory's August 14, 2001 trial date triggers the *Barker* inquiry. Given that the delay was not excessively long, however, it does not weigh heavily in Gregory's favor. *See Lam,* 251 F.3d at 857 (although an approximately 15–month delay was long enough to trigger *Barker* inquiry, it only "militate[d] slightly in Lam's favor"); *Beamon,* 992 F.2d at 1014 (17–month and 20–month delays were not "great").

3. Within this circuit, we have found that a sixth-month delay is a "borderline case," although we have also observed that there is a general consensus among the courts of appeals that eight months constitutes the threshold minimum. *See Lam,* 251 F.3d at 856 & n. 5 (citing *Valentine,* 783 F.2d at 1417 and *Beamon,* 992 F.2d at 1013).

4. The district court stated that "[t]his factor is neutral," *Gregory,* 160 F.Supp.2d at 1175, and

**B. The Reason for the Delay and Gregory's Assertion of His Speedy Trial Right**

Neither the government nor Gregory challenges the district court's evaluations of the second and third *Barker* factors, and we adopt the district court's conclusions regarding each one. The government's negligence, which is the reason for the delay, weighs in Gregory's favor. *See Barker,* 407 U.S. at 531, 92 S.Ct. 2182 (the government's negligence should weigh less heavily in defendant's favor than does a deliberate delay, but "nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant"). Gregory's prompt assertion of his speedy trial right weighs neither for or against Gregory.[4] *See Turner,* 926 F.2d at 889 ("the mere fact of proper, timely assertion [of speedy trial rights] does not warrant dismissal").

**C. Prejudice**

■ The remaining and critical *Barker* factor here is prejudice. We have already concluded that Gregory is entitled to a presumption of prejudice, but presumptive prejudice is simply " 'part of the mix of relevant facts, and its importance increases with the length of the delay.' " *Beamon,* 992 F.2d at 1013 (quoting *Doggett,* 505 U.S. at 656, 112 S.Ct. 2686). As we have interpreted *Doggett,* "no showing of prejudice is required when the delay is great and attributable to the government."

Gregory does not urge us to reach a contrary conclusion. Still, we have twice concluded that the prompt assertion of speedy trial rights weighs, at least slightly, in the defendant's favor. *See, e.g., Beamon,* 992 F.2d at 1013; *United States v. Henry,* 615 F.2d 1223, 1234 (9th Cir.1980). Even if we were to assume that this factor weighed in Gregory's favor, it would not tip the balance.

*United States v. Shell*, 974 F.2d 1035, 1036 (9th Cir.1992). In contrast, we have held that when the government has been negligent and the delay does not far exceed the minimum time required to trigger the full *Barker* inquiry, "we must consider the amount of delay in relation to particularized prejudice." *Beamon*, 992 F.2d at 1014. As discussed above, we assume that the delay was 22–months. This delay is not long enough to excuse Gregory from demonstrating actual prejudice to prevail on his claim. *See id.* (17–month and 20–month delays are insufficient to relieve a defendant of the burden of establishing actual prejudice); *see also Doggett*, 505 U.S. at 657, 112 S.Ct. 2686 ("To be sure, to warrant granting relief, negligence unaccompanied by particularized trial prejudice must have lasted longer then negligence demonstrably causing such prejudice.").

Actual prejudice is typically demonstrated in three ways: "oppressive pretrial incarceration, anxiety and concern of the accused, and the possibility that the [accused's] defense will be impaired." *Doggett*, 505 U.S. at 654, 112 S.Ct. 2686 (internal quotation marks and citations omitted); *Beamon*, 992 F.2d at 1014. In this case, the district court found that Gregory had established actual prejudice. *See Gregory*, 160 F.Supp.2d at 1175. In pleading guilty to Counts 1 and 2 of the second superseding indictment, Gregory made admissions under oath to some of the predicate facts that the government must prove under the third superseding indictment. The district court reasoned that these admissions could be used to impeach Gregory were he to testify at trial, and thus the delay in the filing of the third superseding indictment until after Gregory pled guilty limits his ability to take the stand. *Id.* at 1175–76. The district court also observed that Gregory may be prejudiced at sentencing. If the third superseding indictment had been filed before Gregory pled guilty, the drug and money laundering offenses would have

been grouped together for sentencing purposes. *Id.* at 1176–77; *cf. Martinez*, 77 F.3d at 334 (defendant argued that he suffered from similar testimonial and sentencing prejudice when the government chose to charge him in separate indictments and thus subject him to separate convictions and sentences).

The government argues that the district court's findings do not establish that Gregory was actually prejudiced under the fourth *Barker* factor. The prejudice of which Gregory complains has nothing to do with the length of the delay, the government contends. Instead, it is related to the simple fact that the government chose to prosecute the drug charges and the money laundering charges separately rather than together. In addition, the government argues that any sentencing prejudice is speculative and unrelated to Gregory's argument that his defense was impaired by the delay. Gregory firmly stands by the district court's finding of prejudice because he claims that he has, as a practical matter, been rendered unable to testify. We agree with the government that Gregory has not demonstrated actual prejudice associated with the delay.

"Prejudice, of course, should be assessed in the light of the interests of defendants which the speedy trial right was designed to protect." *Barker*, 407 U.S. at 532, 92 S.Ct. 2182. The prejudice with which we are concerned is prejudice caused by the delay that triggered the *Barker* inquiry, not simply any prejudice that may have occurred before the trial date but unrelated to the fact of the delay itself. *See id.* at 534, 92 S.Ct. 2182 ("But there is no claim that any of Barker's witnesses died or otherwise became unavailable *owing to the delay*." (emphasis added)); *United States v. Guerrero*, 756 F.2d 1342, 1350 (9th Cir. 1984) (Sixth Amendment claim failed where the defendant "has not sufficiently

shown any causal relationship between the delay and the unavailability of two witnesses who [the defendant] claims would have testified to being with him on the day of the robbery").

Gregory's alleged prejudice to his right to testify at trial results solely from the government's choice not to bring the drug counts and the money laundering counts together. This prejudice has nothing to do with the delay itself from the time of the indictment until the time of trial. If the government had issued a third superseding indictment on March 14, 2000, the day after Gregory pled guilty to the drug counts, and Gregory had been brought to trial a short two months later on the money laundering counts, Gregory would still have suffered the prejudice of which he complains even though he suffered no "presumptively prejudicial" delay for Sixth Amendment purposes. The situation would remain the same whether the government tried him two months or five years from the date of his indictment. As Gregory conceded at oral argument, any prejudice to his ability to testify because of admissions he made when pleading guilty to the drug counts has no relation to the 22–month delay itself.[5]

We reach a similar conclusion regarding Gregory's potential sentencing prejudice.[6] The prejudice Gregory could suffer at sentencing is a result of the government's decision to charge the drug and money laundering counts separately, not a result

of the delay itself. Regardless, in light of the district court's ability to depart downward, any sentencing prejudice that Gregory might suffer is speculative rather than actual.[7] Gregory's inability to have his offenses grouped and to serve concurrent sentences is certain, yet:

> [w]hat makes prejudice speculative, even though the sentencing guideline computation is not, is the leeway in the guidelines for departures.... There is no actual prejudice in this case because there are ... departures which the district court could make to avoid any prejudice, if it determined that there was unfair prejudice because of the timing of the indictments.

*Martinez*, 77 F.3d at 336.[8] Here, as in *Martinez*, the district court has at least two options available to mitigate the prejudice that might result from the government's choice to indict Gregory on the money laundering charges after he had pled guilty to and served his time for the drug offenses. First, it may depart downward so that Gregory's criminal history category equals what it would have been absent the government's negligence. *See* U.S.S.G. § 4A1.3 (district court may depart where the "criminal history category significantly over-represents the seriousness of a defendant's criminal history"). Second, it may depart from the range specified by the guidelines if "there exists an aggravating or mitigating circumstance

---

**5.** At the July 31, 2001 hearing on Gregory's motion to dismiss the third superseding indictment, the government agreed not to use Gregory's admissions in its case in chief on the money laundering counts.

**6.** We consider sentencing prejudice because it formed part of the district court's analysis. *See Gregory*, 160 F.Supp.2d at 1176–77; *see also Smith v. Hooey*, 393 U.S. 374, 378, 89 S.Ct. 575, 21 L.Ed.2d 607 (1969) (a delay in bringing a defendant to trial may create prej-

udice if it eliminates the possibility of serving concurrent sentences).

**7.** "The prejudice will only occur if the district judge does not exercise her discretion to depart. That is not likely, if she determines that justice requires departure." *Martinez*, 77 F.3d at 337.

**8.** Although *Martinez* analyzed prejudice for purposes of an alleged Fifth Amendment violation, its closely analogous facts make its reasoning persuasive.

of a kind, or to a degree, not adequately taken into consideration by ... the guidelines." 18 U.S.C. § 3553(b); *see also* U.S.S.G. § 5K2.0. One such mitigating circumstance justifying a downward departure is when a defendant such as Gregory faces "[a] harsher sentence caused by the ... delay in some indictments of offenses which would [have been] grouped." *Martinez*, 77 F.3d at 337. Downward adjustments to Gregory's money laundering sentence may be appropriate to mitigate the effects of any loss of grouping on these unique circumstances, although the decision to depart rests firmly within the district court's discretion.

After considering all of the *Barker* factors, we conclude that the government's negligence, which created a 22–month delay, does not entitle Gregory to dismissal of the third superseding indictment given the absence of prejudice attributable to the delay. *See Beamon*, 992 F.2d at 1014–15. Accordingly, we reverse the district court's dismissal of the indictment on Sixth Amendment grounds.

## II. Fifth Amendment Due Process Claim

█ "The Fifth Amendment guarantees that defendants will not be denied due process as a result of excessive preindictment delay." *United States v. Sherlock*, 962 F.2d 1349, 1353 (9th Cir.1989). To establish a Fifth Amendment violation, Gregory must show that he suffered "actual, non-speculative prejudice from the delay and that the delay, when weighed against the government's reasons for it, offends those fundamental conceptions of justice which lie at the base of our civil and political institutions." *United States v. Gilbert*, 266 F.3d 1180, 1187 (9th Cir.2001) (internal quotation marks and citation omitted). Gregory's burden of proving that a preindictment delay caused actual prejudice is a heavy one. "[T]he proof must be definite and not speculative, and

[Gregory] must demonstrate how the loss of a witness and/or evidence is prejudicial to his case." *United States v. Moran*, 759 F.2d 777, 782 (9th Cir.1985). Because the delay resulted from negligence rather than recklessness or intentional government misconduct, Gregory's showing of prejudice must be even greater. *Id.*

█ Gregory has failed to meet this heavy burden. As discussed in the previous section, Gregory has not demonstrated any actual prejudice resulting from the government's delay. Indeed, neither the possibility that the government might use prior convictions for impeachment purposes nor the possibility that Gregory may have lost the opportunity to have his offenses grouped or his sentences served concurrently are the types of prejudice that violate the Fifth Amendment's guarantee against excessive preindictment delay. *See Martinez*, 77 F.3d at 336–37 (potential prejudice from preindictment delay, resulting in a higher criminal history score and reduced good time credit, was too speculative to violate the defendant's due process rights given the district court's discretion to depart downward); *United States v. Krasn*, 614 F.2d 1229, 1235 (9th Cir.1980) (impeachment value of a felony conviction obtained during the allegedly excessive delay is insufficiently prejudicial to support a Fifth Amendment claim). We therefore need not consider whether the delay offends fundamental conceptions of justice. *See United States v. Dudden*, 65 F.3d 1461, 1466 (9th Cir.1995) (a showing of "actual prejudice [is] required before the second part of the test is triggered"). We reverse the district court's alternative holding entitling Gregory to dismissal of the third superseding indictment on Fifth Amendment grounds.

## CONCLUSION

We hold that despite the government's negligent delay in bringing the third su-

perseding indictment, Gregory is not entitled to dismissal of the indictment on Sixth Amendment grounds because he has not shown prejudice attributable to the delay. We also hold that Gregory failed to establish the actual, nonspeculative prejudice from the delay that is necessary to prove a Fifth Amendment violation based upon excessive preindictment delay. We therefore reverse the dismissal of Gregory's third superseding indictment and remand for further proceedings in the district court.

**REVERSED AND REMANDED.**